IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYDIA L. CLINE, <br>     Plaintiff, | ) <br> ) <br> ) |
| v. | )   Civil Action No. 12-0158 <br> )   United States Magistrate Judge |
| GAI CONSULTANTS, INC., <br>     Defendant. | )   Cynthia Reed Eddy <br> ) |

**MEMORANDUM OPINION**

**I.  Introduction**

Lydia L. Cline brought this action against Defendant GAI Consultants, Inc. ("GAI") pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the Americans with Disabilities Act of 1990, as amended, ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Pennsylvania Minimum Wage Act of 1968 ("MWA"), as amended, 43 PS §333.101-115, alleging that she was unlawfully terminated in November, 2009 because of her age (62 at the time) and disability (spinal disk arthritic degeneration diagnosed in 2006 and requiring leg braces and, at various times, a cane, walker or wheelchair), and that she was not paid for accumulated overtime.[1] GAI denies that it discriminated against Ms. Cline when it terminated her, and denies it failed to pay her overtime. GAI further asserts Plaintiff has failed to meet her *prima facie* burden of proving all elements of her discrimination claims and has not rebutted GAI's legitimate business reasons for termination.

---

[1] Originally filed in the Court of Common Pleas of Allegheny County, Defendant removed the case to federal court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, pursuant to the removal statue. 28 U.S.C. § 1441(b).

1

Specifically, GAI contends that Ms. Cline "lost her job when the department she was working in (the Corporate Administration Department or the 'CAD') was eliminated as part of an effort by GAI to reduce overhead expenses," and Plaintiff's attempt to show that the elimination of the CAD was not really designed to and did not in fact result in reduction of overhead does not establish pretext, but merely questions the wisdom of GAI's business judgment. Defendant's Brief in Support of Summary Judgment (ECF No. 31, at 1).

After careful consideration of the pleadings, Defendant's Motion for Summary Judgment and Response, the Briefs in Support and in Opposition, and the Concise Statements of Material Facts and Responses thereto, the Court will grant the motion with regard to Plaintiff's ADA, FLSA, MWA and PHRA claims (to the extent the latter is based on disability discrimination), and will deny the motion with regard to her ADEA and PHRA claims (to the extent the latter is based upon age discrimination), for the reasons to follow.

## II. Standards

### A. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).

A party claiming that a fact cannot be or is genuinely disputed must support that assertion either by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

Moreover, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. *Williams v. Bor. of West Chester*, 891 F.2d 458, 460–461 (3d Cir. 1989) (non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument, but must "put up or shut up." *Berckeley Inv. Group., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Plaintiff must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions,

answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

### B. Employment Discrimination

The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, terms, conditions, or privileges of employment on the basis of their age. *See* 29 U.S.C. § 623(a)(1). Because Ms. Cline has not provided direct evidence of discrimination, our inquiry is governed by the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (reaffirming the use of the *McDonnell Douglas* standard in ADEA cases

4

involving indirect evidence after the Supreme Court's decision in *Gross v. FBL Fin. Servs.,* 557 U.S. 167 (2009)).

In the first step in the *McDonnell Douglas* analysis,[2] the plaintiff bears the burden of making out a *prima facie* case of discrimination by making a showing that: (1) she is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Smith*, 589 F.3d at 689. The "evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case." *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001) (alteration in original) (internal quotation marks omitted). If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the prima facie case, she has not met her initial burden, and summary judgment is properly granted for the defendant. *See Geraci v. Moody–Tottrup, Int'l, Inc.,* 82 F.3d 578, 580 (3d Cir. 1996).

Once the plaintiff makes out her *prima facie* case, "the burden of production [then] shifts to the defendant to offer a legitimate non-discriminatory [justification] for the adverse employment action." *Smith,* 589 F.3d at 690; *see also Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 644 n. 5 (3d Cir. 1998). This burden is "relatively light" and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason. *Tomasso v. Boeing Co.,* 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994)); *see also*

---

[2] The Court does not reinvent the wheel in restating the standards for considering claims of employment discrimination. Rather, the Court borrows rather heavily from a recent decision of the Court of Appeals for the Third Circuit, *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013), which thoroughly amalgamates the well established standards.

5

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 302 (3d Cir. 2012) (describing this "minimal burden"). At this stage, "the defendant need not prove that the articulated reason actually motivated its conduct." *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 189 (3d Cir. 2003) (internal quotation marks omitted).

After the employer offers a plausible justification, the *McDonnell Douglas* analysis shifts the burden of production back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination. *Fuentes,* 32 F.3d at 764–65; *see also Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 799–800 (3d Cir. 2003); *Doe v. C.A.R.S. Prot. Plus, Inc.,* 527 F.3d 358, 364 (3d Cir. 2008). To make a showing of pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes,* 32 F.3d at 764.

The plaintiff's evidence as it relates to the employer's proffered justification, "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes,* 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 531 (3d Cir. 1992)). Plaintiff need not present additional evidence of discrimination beyond her *prima facie* case to survive summary judgment, because the factfinder may infer, from the combination of the *prima facie* case and its rejection of the employer's proffered reason, that the employer engaged in the adverse employment action for an invidious reason. *See Fuentes,* 32 F.3d at 764; *Fasold v. Justice,* 409 F.3d 178, 185 (3d Cir. 2005); *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147 (2000)

("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.").

*McDonnell Douglas* also provides the framework for assessing an ADA claim on a motion for summary judgment. *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 759, n. 3 (3d Cir. 2004); *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 157 (3d Cir. 1995). A *prima facie* case of discrimination on the basis of disability requires the Plaintiff to show she (1) is a member of a protected class; (2) was qualified for the position she sought to attain or retain; (3) suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

Consideration of a plaintiff's PHRA claims on a motion for summary judgment involves basically the same analysis as that under the ADA or the ADEA. *Fasold*, 409 F.3d at 183-84, 185 n.8 ("PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently.") (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002); *Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 382 (3d Cir. 2002) (ADA and FMLA) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir. 1996)).

### III. Application

#### A. Salient Facts

The record before the Court discloses the following facts. Where a material fact is disputed, the Court will highlight the dispute.

Plaintiff began working for GAI in 1990 and was terminated in November, 2009. Throughout most of her 19 year career with GAI, she was an administrative assistant to Mark Pavlik, who became head of the CAD in Pittsburgh and was an executive officer when the department was eliminated in 2009. At the time of her termination, Plaintiff was the "Senior Office Coordinator" for the CAD.

Mr. Gary DeJidas, GAI's CEO and President at all relevant times, decided in February 2009 to eliminate the CAD to "reduce overhead." Although Plaintiff questions whether that was actually the motive for the decision and offers some inconsistencies and weaknesses to support her assertion that it was a pretext or after-the-fact justification offered to explain her termination (which does present a genuine dispute of material fact), the Court need not resolve this question, and will assume, for sake of the summary judgment motion, that reduction of overhead costs was, in fact, GAI's reason for disbanding the CAD and was a legitimate business decision. At the time of the decision, Mr. Pavlik had eleven employees directly reporting to him, and between that time and October-November 2009, all but Pavlik, Plaintiff and Margaret Ryan were placed elsewhere in the company. Most of the other CAD employees, or at least those whose ages are known to Plaintiff, *see* Plaintiff's Response to Defendant's Concise Statement (ECF No. 36, at Response to GAI's ¶ 30), were substantially (more than twenty years) younger than Plaintiff. When the CAD was finally eliminated, Plaintiff was sixty-two years of age, Pavlik was sixty-one, and Ms. Ryan was fifty-four years of age.

The record is also undisputed that in 2009, GAI was on the verge of a significant expansion of operations, and that within the next couple of years, numerous positions were created, many in Pittsburgh and Murrysville, and many were administrative/clerical positions. None of the positions were offered to Plaintiff. Plaintiff told several supervisory-management

persons in the company that she would like to be reassigned to one of the available positions for which she was qualified; Human Resources also was aware that she was interested, although she did not submit a formal application. GAI disputes that the right people, i.e., Mr. DeJidas or anyone within the chain of command with authority to hire for specific positions or offices, were aware that Plaintiff was interested in reassignment.

Just days after Cline's termination, GAI hired Ms. Sabrina Schmitt, age twenty-seven, as an administrative assistant to perform clerical/administrative work. Plaintiff's Response to Defendant's Concise Statement (ECF No. 36, at Response to GAI's ¶ 78). Defendant maintains that this position involved technical-scientific matters with which Ms. Schmidtt was versed, and Plaintiff was not, but Plaintiff disputes both ends of this argument.

In 2009, GAI hired five clerical/administrative employees at the Pittsburgh and Murrysville offices between the ages of eighteen and forty-eight with an average age of twenty-seven; in 2010, GAI hired six administrative/clerical personnel at the Pittsburgh and Murrysville offices between the ages of twenty and thirty-two, with an average age of twenty-five; in 2011, GAI hired eight clerical/administrative employees at the Pittsburgh and Murrysville office between the ages of nineteen and twenty-nine with an average age of twenty-four. Plaintiff's Response to Defendant's Concise Statement (ECF No. 36, at ¶¶ 56-58). GAI does not dispute these facts but does refute their significance: "Cline cannot prove that the reasons given by DeJidas for the elimination of the CAD were a pretext to age discrimination by her unilateral interpretation of statistics of hires of administrative employees, some of which were billable, non-overhead employees." Defendant's Response to Plaintiff's Concise Statement (ECF No. 42, at Response to Plaintiff's ¶¶ 56-58).

9

Regarding her disability, Ms. Cline was diagnosed with spinal disc arthritic degeneration in 2005, which required back surgery. She took a leave of absence from work, and when she returned to work in 2006 she required the use of a wheelchair. Plaintiff claims that certain managerial persons suggested she should apply for disability benefits, which Defendant disputes. She also asserts that DeJidas and other "executives would look away or look down when she passed them in the hallway – avoiding contact with her," and that DeJidas continued to avoid contact with her after Cline was able to use a walker or a cane, which embarrassed her and made her feel unwanted. Plaintiff's Response to Defendant's Concise Statement of Material Facts (ECF No. 36, at Plaintiff's ¶¶ 67-70).

Plaintiff also complains that she required assistance to use the employee restroom and requested an automatic door opener, which request was rejected, and that on a few occasions, she had to wait until a co-worker was available to assist her to enter the restroom. (While unclear, it appears these incidents occurred years before the CAD was eliminated and Plaintiff's job terminated.) Plaintiff never reported these incidents to Mr. Pavlik, HR or other executives.

Regarding overtime pay allegedly owed, Plaintiff asserts that Mr. Pavlik instructed her at some unspecified time that she was not to record all of the overtime hours she worked, that she often worked from home, and that at the time of termination, she handed an executive "a piece of paper on which Cline had recorded approximately 20 hours of overtime for which she had not yet been paid." Plaintiff's Concise Statement (ECF No. 36, at ¶85).

### B. ADEA and PHRA Age Discrimination

According to GAI, Plaintiff claims she suffered discrimination on the basis of age and disability when her job and the Corporate Administration Department were eliminated as part of a cost-cutting effort to reduce overhead expenses. GAI also argues Plaintiff has failed to prove a

*prima facie* case because she cannot establish she was replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.[3]

While Ms. Cline "may not think it was 'fair' that her job was one of the ones terminated when the CAD was eliminated, that alone does not prove illegal discrimination," and GAI argues there is no genuine issue of material fact as to Plaintiff's claims, and summary judgment must be granted because:

- Cline has failed to state a prima facie case under the ADEA as she has failed to offer evidence or otherwise prove that she was replaced by a substantially younger employee.

- GAI has stated a legitimate, non-discriminatory, and un-rebutted business reason for the elimination of the CAD.

- Cline has not offered or identified any evidence that the CAD was eliminated not for legitimate business reasons, but actually "because of" her age.

- Cline has not offered or identified any evidence that the CAD was eliminated not for legitimate business reasons, but actually "because of" her disability, or in any way related to her disability.

- Cline cannot prove pretext by challenging the business judgment of GAI in eliminating the CAD.

- Cline cannot prove pretext by attempting to prove that GAI eliminated the CAD not because of her age or disability, but because of her supervisor's age or disability.

- Cline cannot prove pretext by claiming that GAI should have transferred her to save her from losing her job in the CAD elimination or that GAI should have immediately rehired her for a job for which she was not qualified.

- Cline has admitted that she has no evidence that she actually worked overtime hours for which she was not paid.

---

[3] GAI admits Ms. Cline was competent and qualified, is a member of a protected class, and suffered an adverse employment action when she was terminated. Thus, only the fourth element of the *prima facie* case is contested.

Defendant's Brief in Support of Summary Judgment (ECF No. 31, at 2).

Defendant mischaracterizes Plaintiff's theory of discrimination when it insists that she is, fundamentally, merely challenging the wisdom and necessity of eliminating the CAD, and it constructs its defense around that characterization – i.e., Plaintiff has not offered sufficient probative evidence to meet her burden of showing that decision was a pretext for discrimination. GAI's characterization is inaccurate and distorts Plaintiff's actual theory of discrimination. The elimination of the CAD certainly provides a substantial *portion* of the *backdrop* for her discrimination claims – the context – but does not capture their *essence*.

Instead, Plaintiff presents a typical employment discrimination claim that she was unlawfully *terminated from her job* because of her age and disability. Plaintiff's response to the motion for summary judgment clarifies her theory that the decision to eliminate the CAD initiated a sequence of events, including: the placement of much younger CAD co-workers to other departments within the organization, while only three older employees, herself being one of them, remained to wind down the CAD; that GAI was beginning a substantial growth spurt which was expected to and did continue; and that GAI failed to transfer or consider her for new administrative/clerical positions for which she was eminently qualified that were created due to the company's expansion, *most* of whom were substantially younger than Plaintiff.

Properly framed, therefore, Plaintiff's evidence adequately supports her claim that she was discriminated against on the basis of her age when she was terminated without being offered similar, available administrative/clerical positions that were elsewhere in the company in her geographic area. Plaintiff does not have to shoot down GAI's business strategy and judgment in deciding to eliminate the CAD in order to support her age discrimination claims and survive the motion for summary judgment; what she has to do – and what she did – is to offer sufficient

evidence to support her claim that she was discriminated against on the basis of age when GAI terminated her and did not offer her reassignment to any of the other administrative/clerical jobs that were available or were soon to become available.

Plaintiff has offered evidence to support her assertion that GAI's decision to eliminate the CAD is not worthy of belief, but it is not overwhelming. When coupled with a strong *prima facie* case that she was replaced or not hired for similar available positions given to a much younger administrative/clerical workforce, however, she meets and exceeds the quantum of proof necessary to overcome Defendant's motion for summary judgment.

### C. ADA and PHRA Disability Discrimination

Unlike her age-based discrimination claims, Plaintiff's claims with regard to her disability are not well supported and do not survive Defendant's motion for summary judgment. The avoidance and evasive eye contact by DeJidas and other executives that Plaintiff subjectively perceived when she returned to work after her back surgery in 2006, and for some time thereafter, were not obviously offensive words or deeds, nor do they constitute adverse employment action. GAI's concerns, expressed by Mr. DeJidas, about its disability insurance premiums were and are not inherently disability averse, especially considering the context in which they were made. Without more, Plaintiff points to little on the record that might support her claim that the adverse employment action for which she seeks statutory damages (her termination) was related to, much less caused in whole or in part by, GAI'S attitude about and conduct toward her disability.

### D. Overtime claims pursuant to FLSA and Minimum Wage Act

Plaintiff offers no details or specifics about the hours and dates on which she allegedly worked overtime without compensation, only "a piece of paper on which Cline had recorded

13

approximately 20 hours of overtime for which she had not yet been paid." Plaintiff's Concise Statement (ECF No. 36, at ¶85). Plaintiff offers no details or specifics about Mr. Pavlik's alleged instructions not to record all of her overtime, and no written or testimonial corroboration. Even if the jury were to credit Plaintiff's unsupported testimony that she worked overtime and was not paid, there is no evidence upon which the jury could make an informed decision about the amount she was owed. This claim must also be dismissed on the motion for summary judgment.

### IV. Conclusion

For the foregoing reasons, the Court will, by separate Order of Court, GRANT Defendant's Motion for Summary Judgment in part, and DENY it in part, consistent with this Memorandum Opinion.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all ECF registered counsel